T.C. Memo. 1996-503

UNITED STATES TAX COURT

LES B. MARTIN AND MILLIE A. MARTIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21214-93.          Filed November 7, 1996.

Les B. Martin and Millie A. Martin, pro sese.

<u>T. Keith Fogg</u> and <u>Veena Luthra</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  In a notice of deficiency, dated August 12, 1993, respondent determined the following deficiencies and penalties with respect to petitioners' Federal income taxes:

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|---------------------------------------|
| 1989 | $12,672 | $2,399 |
| 1990 | 9,276 | 1,855 |

Following concessions by the parties, the issues for decision are: (1) Whether petitioners properly deducted as job expenses and other miscellaneous deductions on Schedule A (itemized deductions) of their 1989 tax return: $3,272 in moving expenses, $5,020 for country club dues and expenses, $14,542 in unreimbursed employee business expenses, $2,101 in investment expenses, $15,355 in job-search expenses, and $3,612 for tax-work (audit) expenses; (2) whether petitioners properly deducted $11,540 as Schedule C business expenses for 1989; (3) whether petitioners properly deducted miscellaneous expenses totaling $7,174 on Schedule A of their 1990 tax return; (4) whether petitioners properly deducted $12,489 as business expenses on Schedule C of their 1990 tax return; and (5) whether petitioners are liable for the accuracy-related penalty under section 6662(a) for 1989 and 1990.

All section references are to the Internal Revenue Code for the years under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioners, husband and wife, resided in Charlottesville, Virginia, at the time they filed their petition. They timely filed joint returns for 1989 and 1990. They submitted amended 1989 and

1990 tax returns (Form 1040X) to respondent's counsel on August 26, 1995, which was approximately 10 days prior to trial.

In January 1987, Mr. Martin accepted employment with Woodhead Industries, Inc. (Woodhead), as president of Aero-Motive Co. (Aero-Motive), a subsidiary of Woodhead. As such, Mr. Martin was responsible for overseeing a 250-person, $25 million manufacturing plant in Kalamazoo, Michigan. He was hired to "do a turnaround and save the company." Prior to accepting employment with Woodhead, Mr. Martin worked for Allen Bradley Co. in Cleveland, Ohio.

Mr. Martin was relieved of his duties as president of Aero-Motive on September 20, 1989; he remained in Woodhead's employ, as a consultant, until June 8, 1990. As part of Mr. Martin's severance package, Woodhead agreed to continue paying Mr. Martin from June 8, 1990, until September 7, 1990, in the event he found no other employment during that period of time.

## Moving Expenses

In January 1987, Mr. Martin moved from Cleveland to Kalamazoo, living in an apartment made available to him by Woodhead (the company apartment). Mrs. Martin joined her husband in Kalamazoo following the sale of their house in Cleveland in April or May of 1987. Because Mrs. Martin brought the family pets (a dog and a cat) with her to Kalamazoo, petitioners were required to move from the company apartment to another apartment. The furniture and personal belongings of the Martins were shipped from Cleveland to Kalamazoo at the time Mrs. Martin joined her husband; most of the

furnishings and belongings were placed in storage. Woodhead paid approximately $1,700 of the expenses of shipping; Mr. Martin paid the expenses incurred in moving from the company apartment to the second apartment. The record does not reveal the year in which Woodhead paid the $1,700, but apparently the $1,700 was reported on Mr. Martin's Form W-2 in the year paid.

Petitioners purchased a house in Kalamazoo that required refurbishing. Refurbishing was completed in 1989; thereafter, petitioners moved into the refurbished house.

On Schedule A of their 1989 return, petitioners claimed $3,272 in moving expenses. The moving expenses were for costs incurred in 1989 in moving petitioners' furniture and belongings from storage and their apartment to petitioners' newly refurbished house. Respondent disallowed this deduction claiming (1) the expenses incurred were not reasonably proximate in time to the commencement of Mr. Martin's employment with Woodhead, and (2) the storage expenses were not in-transit storage expenses.

Unreimbursed Employee Business Expenses

On Schedule A of their 1989 return, petitioners claimed $19,562 in unreimbursed employee business expenses. Of this amount, $5,020 was for membership fees and expenses in Gull Lake Country Club (the country club) paid for by Woodhead and reported on Mr. Martin's 1989 Form W-2.[1] Mr. Martin joined the country club

_____

[1] Because Woodhead paid the country club fees and
(continued...)

in July 1989, and resigned in December 1989, when it was apparent that his position as president of Aero-Motive would be terminated. Approximately $5,000 of the country club expenses represents an initiation fee; the balance is for client entertainment. Respondent disallowed the deduction for country club fees and expenses claiming (1) the membership fees are a capital expenditure and (2) they are not ordinary and necessary business expenses.

On petitioners' amended 1989 tax return, the amount claimed as unreimbursed employee business expenses, other than country club fees and expenses, was reduced from $14,542 ($19,562 - $5,020) to $1,936. At trial and in their posttrial brief, petitioners state they are willing to concede 60 percent of the $1,936, so that now they claim $774 for unreimbursed employee business expenses. Respondent disallowed the deduction for unreimbursed employee business expenses claiming (1) petitioners failed to substantiate these expenses and (2) petitioners did not prove Mr. Martin's employer would have denied reimbursement for these expenses had Mr. Martin sought it.

Investment Expenses

On Schedule A of their 1989 return, petitioners deducted $2,101 as investment expenses. On petitioners' amended 1989 tax

---

[1](...continued)
expenses and reported the payment as income to Mr. Martin on his W-2, the claimed deduction for the country club fees and expenses should have been characterized as "other expenses" rather than unreimbursed employee business expenses.

return, the amount claimed as investment expenses was reduced to $872. At trial and in their posttrial brief, petitioners state they are willing to concede 40 percent of the $872, so that now they claim $349 for investment expenses. The investment expenses were incurred with respect to Mr. Martin's investigating petitioners' possible purchase of stock in publicly held companies. Respondent disallowed this deduction primarily on the basis of petitioners' failure to substantiate, and on the alternative basis that even if the expenses are substantiated, they were incurred in connection with searching for or acquiring new investments and should be added to the basis of the stock acquired.

Job-Search Expenses

On Schedule A of their 1989 return, petitioners claimed $15,355 in job-search expenses. These expenses were incurred prior to and following the termination of Mr. Martin's position as president of Aero-Motive. At trial and in their posttrial brief, petitioners state they are willing to concede 40 percent of the $15,355, so that now they claim $9,213 for job-search expenses. Respondent disallowed this deduction on the basis of petitioners' failure to substantiate and petitioners' failure to show the business purpose of the expenditures.

Tax-Work Expenses

On Schedule A of their 1989 return, petitioners claimed $3,612 in tax-work (audit) expenses. The expenses are for travel to their attorney's office and related activities relative to prior years'

taxes. On petitioners' amended 1989 tax return, the amount claimed for tax-work expenses was reduced to $1,800. At trial and in their posttrial brief, petitioners state they are willing to concede 60 percent of the $1,800, so now they claim $720 for tax-work expenses. Respondent disallowed this deduction on the basis of failure to substantiate.

Schedule C Expenses

After Mr. Martin was relieved of his duties as president of Aero-Motive, he started a consulting business known as M.L. Associates.

During 1989 and 1990, and for 6 or 7 years prior thereto, Mrs. Martin operated a business, known as MAM Leasing-R.E., that leased 2 personal computers which had been acquired in 1983. Starting in 1989, petitioners decided to change the business direction of MAM Leasing-R.E. to that of real estate development. The Schedules C filed with petitioners' original returns for 1989 and 1990 aggregated the income and expenses of M.L. Associates and MAM Leasing-R.E. On petitioners' amended tax returns for 1989 and 1990, the income and expenses of M.L. Associates and MAM Leasing-R.E. were separately reported on separate Schedules C. The income and expenses reported on Schedules C of petitioners' original and amended returns are as follows:

|  | GROSS INCOME | | EXPENSES | |
|  | 1989 | 1990 | 1989 | 1990 |
| Original Return | $ 1,778 | -0- | $11,540 | $12,489 |
| Amended Return | 40,840 | -0- | 21,774 | 13,297 |

The increase in the amount of income for 1989 ($39,062) between that reported on the amended return and that reported on the original return is the gain (short-term) from the sale of Woodhead stock which had originally been reported on Schedule D of petitioners' 1989 tax return. At trial and in their posttrial brief, petitioners state they are willing to concede 30 percent of the expenses claimed on their amended returns, so that now they claim expenses of $15,241 for 1989 and $9,308 for 1990. The majority of these expenses represents home office expenses (including the purchase of furniture) and automobile expenses.

Respondent disallowed this deduction on the ground that the expenditures were not ordinary and necessary expenditures. Further, as to those deductions claimed in connection with the use of petitioners' residence as a home office, the deductions were disallowed, in part, on the basis that some of the claimed expenses were personal, and on the basis that petitioners failed to prove their home office was used exclusively for business purposes.

Miscellaneous Itemized Deductions

On Schedule A of their 1990 return, petitioners claimed $7,174 in miscellaneous itemized expenses. Apparently the majority of the expenses with regard to this deduction consist of travel and meal expenses in connection with Mr. Martin seeking new employment. On petitioners' amended 1990 tax return, the amount of the deduction was increased to $7,176; no explanation was given for the $2 difference. Respondent disallowed the deduction for lack of substantiation.

OPINION

Deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers bear the burden of establishing that they are entitled to the claimed deductions. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 114 (1933). This includes the burden of substantiating the amount and purpose of the item claimed. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs. If claimed deductions are not adequately substantiated, we may estimate them, provided we are convinced that the taxpayer has incurred such expenses and we have a basis upon which to make an estimate. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Moving Expenses

Section 217 permits a deduction for moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee at a new principal place of work. To qualify as being in connection with the commencement of work, the move must be reasonably proximate both in time and place to the commencement of work at the new workplace. In general, moving expenses incurred within 1 year of the commencement of work are considered to be reasonably proximate in time to such commencement. Moving expenses incurred after the 1-year period may be considered reasonably proximate in time if

there are circumstances which prevented the taxpayer from incurring the expenses of moving within the 1-year period. Sec. 1.217-2(a)(3), Income Tax Regs. Costs of storage are not deductible unless incurred in transit, which is defined as within any consecutive 30-day period after the goods are moved from the taxpayer's former residence and before delivery at the new residence. Sec. 1.217-2(b)(3), Income Tax Regs.

Petitioners moved from Cleveland to Kalamazoo in early 1987, when Mr. Martin began a new job. Petitioners claim a $3,273 deduction for moving expenses that were incurred in 1989. We do not believe that these expenses were reasonably proximate in time to the commencement of Mr. Martin's new employment in Kalamazoo. Petitioners claim that there were circumstances beyond their control which dictated the amount of time for the move: (1) The local real estate market was very tight and no houses were available, and (2) business related job activities required all of Mr. Martin's time. We have considered these arguments and reject them. There was no showing that a suitable house in the Kalamazoo area could not have been acquired within a 1-year period, and although Mr. Martin's job activities might have required a substantial portion of his time, there was no showing that Mrs. Martin could not have looked for suitable housing. Further, the expenses of moving the goods from storage to petitioners' newly refurbished house were not incurred in transit, but rather are storage related expenses. Therefore, respondent's determination

with respect to the disallowance of the deduction for moving expenses is sustained.

Employee Business Expenses

We now turn our attention to petitioners' deduction for employee business expenses. Pursuant to section 162(a), a taxpayer may deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. In general, an expense is ordinary if it is considered "normal, usual, or customary" in the context of the particular business out of which it arose. Deputy v. duPont, 308 U.S. 488, 495-496 (1940). The term "ordinary" is also used to distinguish currently deductible items from capital expenditures. Commissioner v. Tellier, 383 U.S. 687, 689-690 (1966). An expense is necessary if it is appropriate and helpful to the operation of the taxpayer's trade or business. Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985); Heineman v. Commissioner, 82 T.C. 538, 543 (1984). Only the portion of an expense that is reasonable in amount is deductible under section 162. United States v. Haskel Engg & Supply Co., 380 F.2d 786, 788-789 (9th Cir. 1967).

Petitioners deducted $5,020 for membership fees and expenses in Gull Lake Country Club. Mr. Martin was an active member of the country club from July to December 1989. Mr. Martin testified that he joined the country club only because he was "strongly encouraged" to do so in connection with his employment. He further

testified that he and his wife never belonged to a country club prior to the time he joined Gull Lake Country Club and have not belonged to one since.  He used the country club solely to entertain business customers, and never on social occasions; his wife and family never used the facilities of the club.  Mr. Martin further testified:

> frankly, Mrs. Martin did not want to join a country club. We're not country club type people and she was very much against it, always has been against it, still is against it * * *  But after I received some pressure, I said, hey, it's going to be one way or the other, so I'll join and we'll try it.  And I finally joined it.

We found Mr. Martin's testimony in this regard to be credible.


Respondent argues that a one-time club membership is not currently deductible, but is a capital expenditure.  Mercantile Natl. Bank v. Commissioner, 30 T.C. 84 (1958), affd. 276 F.2d 58 (5th Cir. 1960).  As a general proposition, we agree that a one-time club membership fee is a capital expenditure because the benefits of the payment will last beyond a 1-year period.  However, here, Mr. Martin both joined and terminated  his membership in the country club in 1989.

Because we find that Mr. Martin's expenses and fees in the country club were business expenses, and because Mr. Martin both joined and terminated his country club membership in the same year, we hold that petitioners are entitled to a deduction of $5,020 on Schedule A of their 1989 tax return.

Petitioners also claim for 1989 $774 as a deduction for unreimbursed employee business expenses. These expenses are for "[taking] employees for refreshments after work to summarize the events from the day and plan the next day".

Ordinary and necessary business expenses generally may not be deducted under section 162(a) if reimbursement is available from a taxpayer's employer. Lucas v. Commissioner, 79 T.C. 1, 7 (1982). Mr. Martin testified that most of the expenses he incurred for taking employees for refreshments after work were submitted to and reimbursed by his employer, but that he was required to "pocket [the claimed expenses] because of budget constraints". Petitioners presented no other evidence in this regard.

We are not convinced that had Mr. Martin sought reimbursement for the claimed "pocketed" expenses in 1989, his request would have been denied. Accordingly, except for the country club fees and expenses, we sustain respondent's disallowance of petitioners' claimed deductions for unreimbursed employee business expenses for 1989.

Investment Expenses

The next matter for our attention is whether petitioners are entitled to deduct $348 in investment expenses for 1989. The expenses were incurred in Mr. Martin's investigating publicly held companies with a view towards the possible purchase of their stock. Respondent disallowed a deduction for these costs on the ground

that they are nondeductible capital expenditures, to be added to the basis of the stock acquired. Wagner v. Commissioner, 78 T.C. 910, 915 (1982). Petitioners failed to show error in respondent's determination. Thus, we sustain respondent's disallowance of the deduction for investment expenses.

Job-Search Expenses

Petitioners claim entitlement to deduct in 1989 $9,213 in job-search expenses. Although respondent argued that petitioners failed to show the business purposes of these expenditures, Mr. Martin testified that when he realized that his position with Aero-Motive was in jeopardy, he began to look for other work. We believe him, but we do not find that the entire amount of job-search expenses that petitioners claim is deductible.

A review of petitioners' receipts shows a number of items that are not ordinary and necessary expenses, as required by section 162(a). For instance, petitioners submitted receipts for the purchase of People magazine and the Enquirer, and for gifts to friends visited by petitioners. There is a $65 check payable to Video Land, with no notation as to its purpose. Petitioners also submitted receipts for the purchase of insecticide, charcoal, and charcoal starter.

Based on the record presented, and using our best estimate, we find, and thus hold, that petitioners are entitled to a deduction for job-search expenses in the amount of $8,000 for 1989.

Tax-Work Expenses

Petitioners now claim entitlement to deduct $720 as tax-work (audit) expenses for 1989. Most of these expenses are for travel to petitioners' attorney's office and related activities for earlier years. Respondent argues that petitioners did not substantiate mileage expenses as required by section 274(d).[2] We agree with respondent; accordingly, we sustain respondent's disallowance of the deduction for tax-work (audit) expenses.

Schedule C Expenses

Petitioners originally claimed a $9,763 Schedule C business loss for 1989, that resulted from their claiming $11,540 in business expenses and $1,778 in income. The statutory notice disallowed $9,361 of the expenses claimed as a section 179 deduction.[3] On their original 1989 return, petitioners claimed $12,860 in expenses relating to the business of Mr. Martin. On their amended 1989 return, petitioners claimed $12,860 in expenses relating to the business of Mr. Martin and $8,914 in expenses

---

[2] The requirements imposed by sec. 274(d) are in addition to those of sec. 162. Furthermore, in the case of travel expenses, sec. 274(d) overrides the Court's ability to approximate a taxpayer's allowable expenses under the Cohan doctrine. Sanford v. Commissioner, 50 T.C. 823, 826-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969).

[3] Sec. 179(a), in general, allows a taxpayer to elect to expense the cost of certain property (known as sec. 179 property) for the taxable year in which the property is placed in service. In general, sec. 179 property is tangible property used in the active conduct of a taxpayer's trade or business that would be subject to depreciation but for the election.

relating to the business of Mrs. Martin. Thus, the total expenses petitioners claimed for 1989 on their amended return for both businesses was $21,774. Respondent contends that petitioners should be allowed no Schedule C expenses for the year 1989 other than those expenses already allowed by respondent in the statutory notice.

Petitioners originally claimed a $12,489 Schedule C business loss for 1990 that resulted from their claiming $12,489 in business expenses and no gross receipts. The statutory notice disallowed all of the claimed expenses. On their amended 1990 return, petitioners claimed $8,349 in expenses relating to the business of Mr. Martin, and $4,948 in expenses relating to the business of Mrs. Martin. Thus, the total expenses petitioners claimed for 1990 on their amended return for both businesses was $13,297. Respondent contends that petitioners are entitled to no Schedule C expenses for 1990.

Petitioner and Mrs. Martin each claimed a home office deduction. Respondent contends that with respect to 1989, Mr. Martin used his office until September 20, 1989, both for his consulting business and as an employee, thus violating the exclusive-use requirement of section 280A(c)(1) because his use of a home office as an employee was not for the convenience of his employer.[4]

_____

[4] Mr. Martin used his claimed home office in connection with his work as president of Aero-Motive until Sept. 20, 1989.

Respondent also argues that many of the expenses petitioners are claiming for business appear to be household expenses, and that they did not prove that these expenses are ordinary and necessary business expenses. For example, Mr. Martin claimed expenses for plumbing, installing a fireplace door, snow removal, pest spraying, and repair and maintenance of a deck. Mrs. Martin claimed expenses for sewage and garbage collection and stress training. Respondent also argues that most of the furniture Mr. Martin purchased for his home office was more of a personal nature than for business. Respondent notes that Mr. Martin had no income from his Schedule C activity during 1989 and 1990.

Section 262 denies a deduction for any personal, living, or family expenses. With respect to deductions under section 162, the taxpayer bears the burden of proving that an expense was incurred for business, rather than personal reasons. Walliser v. Commissioner, 72 T.C. 433, 437 (1979). Specifically, the taxpayer must show that the expense was incurred primarily to benefit his/her business, and there must be a proximate, rather than a remote or incidental, relationship between the claimed expenses and the taxpayer's business. Id. In the instant case, petitioners failed to substantiate that some of the claimed expenses were incurred primarily to benefit their Schedule C businesses. Further, we do not find that petitioners used (as required by sec. 280A(c)) that portion of their residence claimed as a home office either (a) as the principal place of business for their claimed

business activities, or (b) as a place of business to meet or deal with clients. Moreover, petitioners have not satisfied the limitation of section 280A(c)(5), which provides that the amount of the home office deduction is limited to the excess of the gross income generated from the business activity conducted in the home office, less all other deductible expenses attributable to such activity which are not allocable to the use of the home office itself. In other words, the deduction may not create or increase a net loss from the business activity to which it relates. Grinalds v. Commissioner, T.C. Memo. 1993-66 (citing H. Rept. 99-426, at 134-135 (1985), 1986-3 C.B. (Vol. 2) 135). In the instant case, Mr. Martin derived no income from his consulting business in 1989 or 1990[5] and Mrs. Martin only derived $1,778 in 1989 from her Schedule C activity and no income for 1990.

Petitioners also claim entitlement to a business deduction for the use of their 1988 Honda Accord for business activities. Petitioners both testified that their 1988 Honda was used almost exclusively for business. However, on the application for the insurance policy on the automobile, petitioners stated the car was used for pleasure and not for business. In this regard, we do not find petitioners' testimony credible. In sum, petitioners are not

---

[5] Mr. Martin contends his income from Woodhead from the time he was relieved as president of Aero-Motive in September 1989 until September 1990, should be characterized as Schedule C income. We disagree. Mr. Martin received a W-2 with respect to his income, which petitioners reported as wages on their original 1989 and 1990 tax returns.

entitled to a deduction for any of the claimed Schedule C expenses for 1989 or 1990, except to the extent allowed in the statutory notice of deficiency.

## Miscellaneous Itemized Deductions

For 1990, petitioners claimed $7,176 of miscellaneous itemized deductions. Petitioners provided no documentary evidence to support their conclusory testimony that they incurred these deductions. Although sworn testimony may suffice as proof, when it is so general and conclusory in character (as it was here), it will not be sufficient to satisfy petitioners' burden of proof. See Hearn v. Commissioner, 36 T.C. 672, 673-674 (1961), affd. 309 F.2d 431 (9th Cir. 1962).

In addition, since the majority of these expenses are for travel and entertainment, they are subject to the special substantiation provisions of section 274(d), and hence normally can not be substantiated by testimony alone. Consequently, we sustain respondent's disallowance of petitioner's claimed deduction in 1990 for miscellaneous itemized deductions.

## Accuracy-Related Penalty

Finally, we must decide whether petitioners are liable for the accuracy-related penalty under section 6662(a) for 1989 and 1990. Section 6662 imposes a penalty equal to 20 percent of the portion of the underpayment that is attributable to negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1).

Negligence is defined as the failure to exercise the due care that a reasonable, prudent person would exercise under similar circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985). A taxpayer has the burden of proving that respondent's determination is in error. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982).

Petitioners claimed numerous Schedule A and Schedule C expenses on their 1989 and 1990 returns. At trial, they substantially reduced the amount of the deduction for most of these expenses. For the most part, their documentation to substantiate these expenses was lacking. Indeed, petitioners presented no documentary evidence to support their claim of $7,174 in miscellaneous itemized deductions for 1990.

Considering all the facts, we find that petitioners were negligent and disregarded rules and regulations in preparing their 1989 and 1990 returns. Thus, we sustain respondent's determination that petitioners are liable for the accuracy-related penalty on the amount of the underpayment for 1989 and 1990.

To reflect the foregoing,

Decision will be entered under Rule 155.