T.C. Memo. 2016-238

UNITED STATES TAX COURT

RYAN M. FLEISCHER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8685-14.                              Filed December 29, 2016.

<u>Howard N. Kaplan</u>, for petitioner.

<u>Randall L. Eager, Jr.</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  Respondent determined deficiencies of $14,189, $13,985,

and $13,389 in petitioner's Federal income tax for 2009, 2010, and 2011,

[*2] respectively. The only issue for decision is whether petitioner or his S corporation must report the income earned for the years in issue.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and the facts drawn from stipulated exhibits are incorporated herein by this reference. Petitioner resided in Nebraska when he timely filed his petition.

I.     Petitioner's Occupation

Petitioner is a financial consultant, developing investment portfolios for clients. After graduating from the University of Nebraska with a degree in business administration, petitioner obtained his series 6, 7, 24, 63, and 65 licenses so that he could purchase and sell securities under the Securities Exchange Act of 1934 (Act), Ch. 404, 48 Stat. 881 (codified as amended at 15 U.S.C. secs. 78a to 78pp (2006)), and the Financial Industry Regulatory Authority (FINRA) and the

---

[1]Respondent also disallowed deductions for certain expenses reported on the Forms 1120S, U.S. Income Tax Return for an S Corporation, determining that "certain business expenses that were previously reported on the S Corp return, are allowed on Schedule C to the extent of ($38,046.00), ($45,019.00), and ($60,844.00) for taxable years 2009, 2010, and 2011, respectively, since the related expenses were expended and paid for ordinary, [sic] and necessary business purposes." The notice of deficiency reflects the parties' partial resolution of the deductions for business expenses on Schedules C, Profit or Loss From Business, and Schedules E, Supplemental Income and Loss (From rental real estate, royalties, partnerships, S corporations, estates, trusts, REMICs, etc.), for the years in issue, subject to the resolution of the income issue.

**[*3]** North American Securities Administration Association (NASAA) rules.[2]  He

is also a certified financial planner, a registered financial consultant, and a

licensed seller of variable health and life insurance policies under Nebraska law.

Petitioner started his career with Waddell & Reed, Inc., an investment firm

that sold proprietary products and performed financial planning.  He left Waddell

& Reed, Inc., to work for First National Bank of Omaha, where he again sold

proprietary products to clients.  The clients of Waddell & Reed, Inc., and First

National Bank of Omaha were not petitioner's; he provided advice and services to

his employers' clients.  Wanting to have his own clients and accounts on which to

work--and to provide his clients with varying investment opportunities--petitioner

struck out on his own.

---

[2]Pursuant to FINRA and NASAA, the series 6 license allows the licensee to sell mutual funds, variable annuities, and insurance premiums.  The series 7 license is the general securities representative license, which allows the licensee to sell almost any type of individual security.  The series 24 license allows the licensee to supervise and manage a general securities broker-dealer.  The series 63 license is the Uniform Securities Agent License, which allows the licensee to transact business within a State and is required by every State.  The series 65 license is required to provide financial advice or services on a noncommission basis.

[*4] II.     Petitioner's Agreements and Contract

On February 2, 2006, petitioner entered into a representative agreement with Linsco/Private Ledger Financial Services (LPL).  The agreement expressly states that petitioner's relationship with LPL is that of an independent contractor. Petitioner signed the agreement in his personal capacity.

After consulting both his business attorney and his CPA, petitioner incorporated Fleischer Wealth Plan (FWP) and caused it to elect S corporation status.  The Court takes judicial notice of the fact that FWP was incorporated in the State of Nebraska on February 7, 2006.  See Fed. R. Evid. 201.  Petitioner was the sole shareholder and the president, secretary, and treasurer of FWP.  On February 28, 2006, petitioner entered into an employment agreement with FWP. The agreement expressly states that petitioner's term of employment with FWP began on February 28, 2006.

Petitioner was paid an annual salary to "perform duties in the capacity of Financial Advisor."  Those duties consisted of:  (1) acting in the clients' best interests in managing client investment portfolios; (2) expanding FWP's client base and the "overall presence" of FWP; (3) drafting and reviewing financial documents; and (4) representing FWP "diligently and responsibly at all times." The agreement gives FWP the right to reasonably modify petitioner's duties at its

**[*5]** discretion. The agreement includes other common provisions found in employment agreements, such as provisions for the reimbursement of expenses and how to terminate the agreement, an arbitration clause, and a noncompete clause. The agreement does not include a provision requiring petitioner to remit any commissions or fees from LPL or any other third party to FWP. Petitioner signed the agreement twice--once as FWP's president and once in his personal capacity. Outside of the employment agreement, FWP entered into no other contracts during the years in issue.

On March 13, 2008, petitioner entered into a broker contract with MassMutual Financial Group (Mass Mutual). The contract is between petitioner and MassMutual--there is no mention of FWP in the contract. The contract explicitly states that there is no employer-employee relationship between petitioner and MassMutual. Petitioner signed the contract in his personal capacity. At the time petitioner entered into the contract, he was selling only fixed insurance products.

There are no addendums or amendments to either the LPL agreement or the MassMutual contract requiring those entities to begin paying FWP instead of petitioner or to recognize FWP in any capacity.

**[\*6]** III.     Petitioner's Forms 1040 and FWP's Forms 1120S

    A.     2009

For 2009 petitioner reported taxable wage income of $34,851 from FWP on his Form 1040, U.S. Individual Income Tax Return.[3] He attached a Schedule E to his Form 1040, reporting nonpassive income of $11,924 from FWP. No amount was reported for self-employment tax, but petitioner did claim a self-employed health insurance deduction of $1,351 on his Form 1040. There were no Forms 1099[4] from LPL or MassMutual and no Schedule C attached to petitioner's 2009 Form 1040.

For 2009 FWP reported gross receipts or sales of $147,617, total expenses of $135,693, and ordinary business income of $11,924 on its Form 1120S. The amount of gross receipts or sales was calculated from the Forms 1099 that LPL and MassMutual issued to petitioner for 2009.[5] The Schedule K-1, Shareholder's

---

[3]Petitioner filed a Form 1040X, Amended U.S. Individual Income Tax Return, for 2009 to claim the first-time homebuyer credit. No other changes were made to his 2009 Form 1040.

[4]Generally, Form 1099-MISC, Miscellaneous Income, is the form used to report nonemployee compensation. The Court will refer to the form as Form 1099 throughout.

[5]Although no Forms 1099 are attached to the Federal income tax returns that were admitted into the record, the parties stipulated that both LPL and

(continued...)

[*7] Share of Income, Deductions, Credits, etc., that FWP issued to petitioner reported ordinary business income of $11,924.[6]

B.   2010

For 2010 petitioner reported taxable wage income of $34,856 from FWP on his Form 1040.  He attached a Schedule E to his Form 1040, reporting nonpassive income of $147,642 from FWP.  No amount was reported for self-employment tax, but petitioner did claim a self-employed health insurance deduction of $1,356 on his Form 1040.  There were no Forms 1099 from LPL or MassMutual and only page 2 of a Schedule C attached to petitioner's 2010 Form 1040.  Petitioner reported in part V on page 2 of the Schedule C "other expenses" of $284,963.  "Reported by" was typed across from that amount followed by a redacted word or phrase.

---

[5](...continued)
MassMutual issued Forms 1099 to petitioner in his individual capacity for the years in issue.

[6]Generally, an S corporation is not subject to income taxes.  Sec. 1363(a).  The corporation's income, losses, deductions, and credits are passed through to the shareholders at their pro rata shares.  Sec. 1366(a).  Because petitioner was the sole shareholder of FWP, 100% of these items was passed through to him.  See supra p. 4.  An S corporation is required to file an information return.  Sec. 6037.  Unless otherwise stated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*8]**  For 2010 FWP reported gross receipts or sales of $289,201, total expenses of $141,559, and ordinary business income of $147,642 on its Form 1120S.  The reported gross receipts or sales were calculated from the Forms 1099 that LPL and MassMutual issued to petitioner for 2010.  See supra note 5.  The Schedule K-1 that FWP issued to petitioner reported ordinary business income of $147,642.

C.    2011

For 2011 petitioner reported taxable wage income of $34,996 from FWP on his Form 1040.  He attached to his Form 1040 a Schedule C, showing "Ryan Fleischer" as both his principal business or profession and his business name and reporting gross income of $266,292 and "other expenses" of $266,292 for a net profit or loss of zero.[7]  Petitioner also attached a Schedule E to his Form 1040, reporting nonpassive income of $115,327 from FWP.  No amount was reported for self-employment tax, but petitioner did claim a self-employed health insurance deduction of $1,496 on his Form 1040.  There were no Forms 1099 from LPL or MassMutual attached to petitioner's 2011 Form 1040.

---

[7]Petitioner testified that he "zeroed out" Schedules C and reported all income from LPL and MassMutual on Schedules E for the years in issue.  The only Federal income tax return from one of the years in issue that fully corroborates petitioner's testimony is the return for 2011.  While not in issue, petitioner's return for 2006, the year he incorporated FWP, also corroborates his testimony.

**[*9]** For 2011 FWP reported gross receipts or sales of $266,292, total expenses of $150,965, and ordinary business income of $115,327. The reported gross receipts or sales were calculated from the Forms 1099 that LPL and MassMutual issued to petitioner for 2011. See supra note 5. The Schedule K-1 that FWP issued to petitioner reported ordinary business income of $115,327.

IV. Notice of Deficiency

Respondent issued petitioner a notice of deficiency, determining deficiencies of $14,189, $13,985, and $13,389 for 2009, 2010, and 2011, respectively. Respondent determined under sections 482 and 61 that the gross receipts or sales FWP reported on its Forms 1120S should have properly been reported by petitioner as self-employment income on Schedules C attached to his Forms 1040 for the years in issue. Petitioner timely petitioned the Court challenging respondent's determination.

OPINION

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving it incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under certain circumstances the burden of proof as to factual matters may shift to the Commissioner pursuant to section 7491(a). Petitioner did not argue for a burden

**[*10]** shift under section 7491(a), and the record does not establish that he has met the prerequisites for a burden shift; therefore, the burden of proof remains his.

I.      General and Longstanding Principles of Income Taxation

It has long been held that the first principle of income taxation is that income must be taxed to him who earned it.  See United States v. Basye, 410 U.S. 441, 449 (1973); Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949); Lucas v. Earl, 281 U.S. 111 (1930).  While this principle is easily applied between two individuals by simply asking who performed the services or created the goods, the question of who earned the income is not so easily answered when a corporation is involved.  For almost as long as this first principle of income taxation has been in place, the principle that a corporation is a separate taxable entity has been, too.  See Moline Props., Inc. v. Commissioner, 319 U.S. 436, 439 (1943) (citing New Colonial Ice Co. v. Helvering, 292 U.S. 435, 442 (1934), and Deputy v. du Pont, 308 U.S. 488, 494 (1940)).

Because it is impractical to apply a simplistic "who earned the income" test when the Court's choices are a corporation and its service-provider employee, the question has evolved to one of "who controls the earning of the income."  Johnson v. Commissioner, 78 T.C. 882, 891 (1982) (citing Vercio v. Commissioner, 73 T.C. 1246, 1254-1255 (1980)), aff'd without published opinion, 734 F.2d 20 (9th

**[*11]** Cir. 1984).  For a corporation, not its service-provider employee, to be the controller of the income, two elements must be found:  (1) the individual providing the services must be an employee of the corporation whom the corporation can direct and control in a meaningful sense, id. (citing Vnuk v. Commissioner, 621 F.2d 1318, 1320-1321 (8th Cir. 1980), aff'g T.C. Memo. 1979-164); and (2) "there must exist between the corporation and the person or entity using the services a contract or similar indicium recognizing the corporation's controlling position", id. (citing Pacella v. Commissioner, 78 T.C. 604 (1982), and Keller v. Commissioner, 77 T.C. 1014 (1981), aff'd, 723 F.2d 58 (10th Cir. 1983)).  These elements can be found in the employment tax regulations.  Sec. 31.3121(d)-1(c)(2), Employment Tax Regs.; see Sargent v. Commissioner, 929 F.2d 1252, 1256 (8th Cir. 1991) ("Accordingly, within Regulation § 31.3121(d)-1(c)(2), two necessary elements must be met before the corporation * * * may be considered the true controller of the service-provider."), rev'g 93 T.C. 572 (1989).  Because both elements must be met before the corporation will be considered to control the service-provider employee and because the Court finds that there is no contract or other indicium that FWP exhibited control over petitioner, the Court will discuss only the second element.

[*12] II.    Whether FWP Entered Into a Contract or Other Indicium With LPL or MassMutual That Exhibited Its Control Over Petitioner

On February 2, 2006, petitioner individually entered into a representative agreement with LPL.  There is no mention of FWP in the representative agreement.  Moreover, FWP was not incorporated until February 7, 2006, meaning it did not exist as a separate entity when petitioner entered into the representative agreement with LPL.  Additionally, petitioner did not enter into an agreement that purportedly created an employer-employee relationship with FWP until approximately three weeks later.  Therefore, there was no indicium that LPL was aware that FWP controlled petitioner.

There is also no mention of FWP in the broker contract petitioner signed with MassMutual.  Petitioner did enter into the broker contract after FWP was incorporated on February 7, 2006, but he still signed the contract in his individual capacity.  The contract expressly states that there is no employer-employee relationship between MassMutual and petitioner.  There is no mention of FWP in the contract and no evidence in the record that MassMutual was aware of whether FWP had any degree of meaningful control over petitioner.  Additionally, petitioner testified that FWP could have signed the broker contract with MassMutual because fixed insurance products were the only products that would

[*13] be sold.  He chose to sign the broker contract in his individual capacity because of the possibility of selling variable insurance products in the future.  Although the contract with MassMutual allowed petitioner to sell variable insurance products, he neither testified, nor offered any other evidence, that that possibility had come to fruition.

III.    Petitioner's Arguments

A.    FWP's Lack of Contracts With LPL and MassMutual

Petitioner does not dispute that LPL and MassMutual never contracted directly with FWP.  He argues that it was impossible for those entities to do so because FWP was not a registered entity under the securities laws and regulations.  To support his argument petitioner relies on section 78o, Registration and Regulation of Brokers and Dealers, of the Act as evidence that FWP could not enter into representative agreements and broker contracts.  See 15 U.S.C. sec. 78o(a)(1) (2006).[8]  Section 78o(a)(1) of the Act provides:

> It shall be unlawful for any broker or dealer which is either a person other than a natural person or a natural person not associated with a broker or dealer which is a person other than a natural person (other than such a broker or dealer whose business is exclusively intrastate and who does not make use of any facility of a national securities

_____

[8]In 2010, one of the years in issue, Congress amended the Act.  See Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376.  Section 78o(a)(1) of the Act was not modified by that legislation.

[*14] exchange) to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) unless such broker or dealer is registered in accordance with subsection (b) of this section.  [15 U.S.C. sec. 78o(a)(1).]

While section 78o(a)(1) of the Act clearly provides that neither "a natural person" nor "a person other than a natural person" can effect any transactions in or induce the purchase or sale of securities unless that person is properly registered to do so, the section does not prohibit an entity from becoming registered to do so.  Indeed, petitioner did not offer and the Court has not found any substantive authority that would prohibit FWP from registering to purchase or sell securities under the Act. Petitioner testified that it would be overly burdensome and "would cost millions and millions of dollars" for FWP to register under the Act, but he offered no other evidence to corroborate his testimony.  The fact that FWP was not registered, thus preventing it from engaging in the sale of securities, does not allow petitioner to assign the income he earned in his personal capacity to FWP.  See Jones v. Commissioner, 64 T.C. 1066 (1975) (holding that a court reporter improperly assigned income to his personal service corporation because a court reporter was legally required to be an individual, and although the corporation was a valid entity, by law it could not perform such services).

**[*15]** B.     <u>Petitioner's Reliance on Sargent and Rev. Rul. 70-101</u>

Petitioner argues that the Court should rule in his favor because <u>Sargent v. Commissioner</u>, 929 F.2d 1252, is binding precedent and controls. Although petitioner's case is appealable to the Court of Appeals for the Eighth Circuit absent a stipulation to the contrary, <u>see</u> sec. 7482(b)(1)(A), (2), his reliance on <u>Sargent</u> is misplaced. In <u>Sargent</u> two hockey players formed personal service corporations that in turn contracted with the hockey team for which they played. <u>Sargent v. Commissioner</u>, 929 F.2d at 1255. The team paid the corporations, and the corporations then paid the players a salary and contributed funds to pension plans for the players. <u>Id.</u> The Court of Appeals held that the taxpayers met both elements of the <u>Johnson</u> test. Petitioner's case is distinguishable because, unlike the taxpayers in <u>Sargent</u>, his corporation had no contractual relationship with LPL or MassMutual. Moreover, FWP had no contractual relationships outside of the employment agreement with petitioner.

Petitioner also relies on Rev. Rul. 70-101, 1970-1 C.B. 278, which states that the Internal Revenue Service will generally treat professional service organizations formed under State professional association or corporation statutes as corporations for tax purposes. Petitioner's argument is that FWP is a validly incorporated entity under Nebraska State law and must be recognized as a

[*16] separate, taxable entity. The validity of FWP is not in issue here, and moreover, the validity of the corporate entity "does not preclude reallocation under the assignment of income doctrine." Wilson v. United States, 530 F.2d 772, 778 (8th Cir. 1976).

IV.    Conclusion

There was no indicium for LPL to believe that FWP had any meaningful control over petitioner as FWP had not been incorporated and no purported employer-employee relationship between FWP and petitioner existed at the time petitioner signed the representative agreement with LPL. Moreover, there is no evidence of any amendments or addendums to the LPL agreement after FWP was incorporated. Although FWP had been incorporated before petitioner entered into the broker contract with MassMutual, FWP is not mentioned in the contract, and petitioner offered no evidence that MassMutual had any other indicium that FWP had any meaningful control over him. See Roubik v. Commissioner, 53 T.C. 365 (1969) (holding income earned by individual taxpayers where corporation did not enter into any agreements with third parties and agreements between physicians in their independent capacities and third parties continued after corporation was formed). For the reasons stated above, the Court finds that petitioner has failed to meet the second element of the control test outlined in Johnson. Because

**[*17]** petitioner does not meet the second element of the test enumerated in Johnson, there is no need for the Court to analyze, and the Court makes no decision as to, whether petitioner was an employee of FWP. Therefore, petitioner individually, not FWP, should have reported the income earned under the representative agreement with LPL and the broker contract with MassMutual for the years in issue.

The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.