T.C. Summary Opinion 2017-60

UNITED STATES TAX COURT

IVAN LEVINE, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21041-15S.                    Filed August 7, 2017.

Ivan Levine, pro se.

<u>Sandeep Singh</u> and <u>Trent D. Usitalo</u>, for respondent.

SUMMARY OPINION

LEYDEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated May 29, 2015, the Internal Revenue Service (IRS)[2] determined a deficiency in petitioner's 2011 Federal income tax of $5,019 and a section 6662(a) accuracy-related penalty of $717.40.[3] After concessions by respondent,[4] the issues for decision are whether: (1) the period of limitations within which the IRS had to assess income tax for 2011 expired on April 15,

---

[1](...continued)
Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The Court uses the term "IRS" to refer to administrative actions taken outside of these proceedings. The Court uses the term "respondent" to refer to the Commissioner of Internal Revenue, who is the head of the IRS and is respondent in this case, and to refer to actions taken in connection with this case.

[3]Petitioner filed a 2011 joint Federal income tax return (2011 tax return) with his then wife (hereafter referred to as petitioner's wife). The IRS issued a notice of deficiency to both petitioner and his wife with respect to that tax return. Petitioner's wife neither filed a petition with the Court nor signed the petition filed by petitioner.

[4]At trial respondent conceded that petitioner could deduct expenses of $3,409 for legal and professional services and $863 for insurance (other than health) for his financial services business. The amounts conceded as expenses for legal and professional services appear from the record to be payments for errors and omissions insurance (E&O insurance) and fees paid to a broker-dealer. Respondent did not explain which expenses specifically correspond to the conceded amount for insurance (other than health) expenses.

2016,[5] (2) petitioner can deduct various trade or business expenses reported on two Schedules C, Profit or Loss From Business, and (3) petitioner is liable for a section 6662(a) accuracy-related penalty.

## Background

Some of the facts have been stipulated and are so found. Petitioner resided in California at the time he timely filed his petition.

## I.   Petitioner's Businesses

Petitioner is a retired certified public accountant (C.P.A.) and holds a master of business administration degree. During 2011 petitioner operated two trades and businesses as unincorporated sole proprietorships: (1) a financial services business and (2) a marketing consulting business. Petitioner conducted both businesses from an office in his home, a rented, four-bedroom, two-story house he shared with his wife and two children.

Petitioner used personal credit cards and bank accounts in 2011 to pay both his personal and business expenses. He did not maintain a separate credit card or bank account for either of his businesses. In 2011 petitioner paid for a three-line family cellular service plan and a single household cable and internet service plan.

_____

[5]Petitioner asserted this issue for the first time at trial. The Court ordered the parties to file briefs to address the issue.

Petitioner used his cellular phone and the cable and internet services for both his personal and business activities.

In 2011 petitioner owned and drove two passenger automobiles--a 1987 Porsche 911 and a 1995 Chevrolet Suburban--and used both for his personal and business activities. The parties stipulated repair invoices for both passenger automobiles. The repair invoices for the Porsche spanned the period April 13 to November 17, 2011. The odometer reading for the Porsche was 175,203 miles in the repair invoice dated April 13, 2011, and 179,280 miles in the repair invoice dated November 17, 2011. According to these repair invoices, petitioner drove the Porsche a total of 4,071 miles during that seven-month period.

The repair invoices for the Chevrolet Suburban spanned the period January 7 to November 9, 2011. The odometer reading for the Chevrolet Suburban was 115,149 miles in the repair invoice dated January 7, 2011, and 118,201 miles in the repair invoice dated November 9, 2011. According to these repair invoices, petitioner drove the Chevrolet Suburban a total of 3,051 miles during that 11-month period.

A.    Financial Services Business

Sometime in 2008 petitioner started a financial services business and obtained his series 7 and series 66 licenses to sell securities and provide

investment advice.[6] In 2011 petitioner was an investment adviser representative and worked with two broker-dealers who paid him commissions that they reported on Forms W-2, Wage and Tax Statement, and issued to him.

Petitioner paid E&O insurance and fees to one of the broker-dealers. The practice of that broker-dealer was to subtract the cost of the E&O insurance and fees from petitioner's commissions. In 2011, however, petitioner paid a total of $3,409 to that broker-dealer from his personal checking account for the E&O insurance and fees that exceeded the commissions he earned in 2011.

During 2011 petitioner continued to build a client base for his financial services business by marketing his business and prospecting to acquire clients. Petitioner hired and paid a marketing company in 2011 for advice on how to market his financial services business.

Petitioner used his home office as the principal place of business for his financial services business. In 2011, in addition to his cellular phone and the internet services, petitioner used a fax machine and various office supplies in his

---

[6]The series 7 license, a general securities representative license, allows the licensee to sell almost any type of individual security. See, e.g., Fleischer v. Commissioner, T.C. Memo. 2016-238, at *2-*3 n.2. The series 66 license allows the licensee to advise clients on investments. See, e.g., Cisneros v. FirstMerit Corp., No. 14-cv-14893, 2016 U.S. Dist. LEXIS 14655, at *3 (E.D. Mich. Feb. 8, 2016).

home office to conduct his financial services business. Petitioner also drove to meet with prospective and current clients at various locations and to attend local networking events. Petitioner used a Google calendar to log his personal appointments, business appointments with prospective and current clients, and business networking events.[7]

B.      Marketing Consulting Business

The record does not show when petitioner started his marketing consulting business. Petitioner prepared marketing materials and helped with presentations for clients. Petitioner conducted most of the work for his marketing consulting business at his home office using his cellular phone and computer. During 2011 petitioner did not use a Google calendar to log appointments for his marketing consulting business.

---

[7]At trial the parties stipulated petitioner's Google calendars for January to December 2011. Respondent did not challenge the veracity or accuracy of the Google calendars.

II.    2011 Tax Return

Petitioner used a tax software program to prepare and timely file his 2011

tax return.  See supra note 3.  He reported the amounts in the Forms W-2 issued by

the broker-dealers as wages.[8]

    A.    Financial Services Business

Petitioner attached the Schedule C to his 2011 tax return for his financial

services business.  He did not report any gross receipts from that business on Part

I, Income, of the Schedule C.  See supra note 8.  Petitioner claimed deductions for

the following expenses totaling $20,118, resulting in a net loss in the same

amount:

_____

[8]The Schedule C for the financial services business filed with his 2011 tax
return does not report any amount on line 1c, "Income reported to you on Form W-
2 if the 'Statutory Employee' box on that form was checked.  Caution.  See * * *
[instructions] before completing this line".  The instructions to the 2011 Schedule
C direct taxpayers to do the following:

> If you received a Form W-2 and the "Statutory employee" box in box 13 of
> that form was checked, report your income and expenses related to that
> income on Schedule C or C-EZ.  Enter your statutory employee income
> from box 1 of Form W-2 on this line.  * * * Statutory employees include
> full-time life insurance agents, certain agent or commission drivers and
> traveling salespersons, and certain homeowners.

The box on line 13 for statutory employee on either Form W-2 is not checked.
Respondent conceded that petitioner operated his financial services business as a
trade or business and has not challenged petitioner's classification of his financial
services business income as wages.

| Category | Amount |
|---|---|
| Advertising | $120 |
| Car and truck expenses | 8,748 |
| Depreciation | 1,694 |
| Insurance (other than health) | 1,036 |
| Legal and professional services | 92 |
| Office expenses | 3,081 |
| Supplies | 1,886 |
| Utilities | 1,518 |
| Other expenses | 1,943 |

Petitioner claimed a depreciation deduction in a Form 4562, Depreciation and Amortization, for the Porsche. In that Form 4562 petitioner reported that during 2011 he used the Porsche 95.45% of the time for his financial services business and he drove it a total of 11,000 miles--10,500 miles for business use and 500 miles for personal use.

Petitioner claimed a deduction for utility expenses equal to the cost of the household plan for the cable and internet services. Petitioner's deduction for other expenses consisted of $95 for tolls, $92 for software, and $1,756 for cellular phone services, the cost of the three-line family cellular service plan.

B.     Marketing Consulting Business

Petitioner also attached to his 2011 tax return the Schedule C for his marketing consulting business.  He reported gross receipts of $18,750 and claimed deductions for the following expenses totaling $18,750, resulting in a zero net profit:

| Category | Amount |
|---|---|
| Car and truck expenses | $2,221 |
| Depreciation | 2,587 |
| Business use of home | 13,942 |

Petitioner claimed a depreciation deduction in a Form 4562 for the Chevrolet Suburban.  In the Form 4562 petitioner reported that during 2011 he used the Chevrolet Suburban 87.69% of the time for his marketing consulting business and he drove it a total of 13,000 miles--11,400 miles for business use and 1,600 miles for personal use.

Petitioner attached a Form 8829, Expenses for Business Use of Your Home, to his 2011 tax return.  In the 2011 Form 8829 petitioner reported that, out of his home's total area of 2,500 square feet, he used 480 square feet, or 19.2%, regularly and exclusively for his marketing consulting business.  Petitioner also reported in

the 2011 Form 8829 "indirect expenses" for the home of $38,692 for rent and $2,796 for utilities, totaling $41,488.

Petitioner multiplied the total indirect expenses, $41,488, by the percentage of the home used for his home office, 19.2%, and calculated $7,966 as the tentative amount of the indirect expenses allocated to the use of his home office for business purposes for 2011. Petitioner reported a carryover of operating expenses of $30,407 from a 2010 Form 8829.[9] As a result, petitioner calculated home business operating expenses for 2011 of $38,373, the sum of the allocated home business expenses of $7,966 and the 2010 carryover of $30,407. However, the allowable expenses for the business use of his home were limited to $13,942, the tentative profit[10] reported in the Schedule C for his marketing consulting business. The difference between the total 2011 home business operating expenses and the allowable expenses, $24,431, was reported in the 2011 Form 8829 as a "Carryover of Unallowed Expenses to 2012".

---

[9]In the 2011 Form 8829 petitioner also reported a carryover of excess casualty losses and depreciation from the 2010 Form 8829 of $5,510.

[10]The tentative profit in the Schedule C for petitioner's marketing consulting business was calculated by subtracting the reported business expenses, excluding the allowable expenses for business use of his home, from the gross receipts.

III.    Consent To Extend The Time To Assess Tax

On October 1, 2014, the IRS received a Form 872, Consent to Extend the Time to Assess Tax, for 2011 signed by petitioner and his wife whereby they consented to extend the time in which the IRS could assess income tax for 2011 to April 15, 2016.  On May 29, 2015, before the expiration of the extended time, the IRS issued the notice of deficiency to petitioner and his wife.

On August 18, 2015, petitioner timely filed a petition with the Court for redetermination of the deficiency and the accuracy-related penalty for 2011.

Discussion

I.    Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of providing it incorrect.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  If the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining his liability and satisfies other conditions, then the burden of proof shifts to the Commissioner.  Sec. 7491(a)(1) and (2)(A) and (B).

At trial petitioner conceded that he had the burden of proof, but on brief he argued that the burden of proof had shifted to respondent under section 7491(a).  However, petitioner has not established that he complied with the requirements of

section 7491(a)(2)(A) and (B) to substantiate items, maintain records, and cooperate fully with respondent's reasonable requests. Therefore, the burden does not shift to respondent under section 7491(a). See Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001). The burden of proof remains with petitioner.

II.     Period of Limitations on Assessment

Petitioner argued for the first time at trial that the period of limitations within which the IRS may assess income tax for 2011 had expired on April 15, 2016, the date shown in the Form 872. Petitioner's argument is erroneous because the period of limitations on assessment is suspended during the 90-day period following the mailing of a notice of deficiency, and where, as here, the taxpayer petitions the Court in response to the notice, until our decision becomes final and for an additional 60 days thereafter. See secs. 6213(a), 6503(a)(1); Blonien v. Commissioner, 118 T.C. 541, 562 (2002).

The IRS issued the notice of deficiency for 2011 on May 29, 2015, well within the period agreed to by the parties in the Form 872, and by doing so suspended the period of limitations on assessment for a 90-day period. Petitioner did not dispute receiving the timely issued notice of deficiency.

Petitioner filed a petition, and his case was docketed with the Court on August 18, 2015. By doing so he further suspended the period of limitations for

assessment until 60 days after the Court issues its decision in the case.  See sec. 6503(a)(1); Blonien v. Commissioner, 118 T.C. at 562.  Therefore, the period of limitations for assessing income tax for 2011 did not expire on April 15, 2016.

III.    Schedules C Deductions

As the Court has observed in countless opinions, deductions are a matter of legislative grace, and a taxpayer bears the burden of proving entitlement to any claimed deduction.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  The taxpayer claiming a deduction in a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  See sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.

A taxpayer may deduct ordinary and necessary expenses paid in connection with operating a trade or business.  Sec. 162(a); Boyd v. Commissioner, 122 T.C. 305, 313 (2004).  To be ordinary the expense must be of a common or frequent occurrence in the type of business involved.  Deputy v. du Pont, 308 U.S. 488, 495 (1940).  To be necessary an expense must be appropriate and helpful to the

taxpayer's business. Welch v. Helvering, 290 U.S. at 113. The expenditure must be "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs. If an expense is connected to personal, living, or family expenses, however, it is not allowed as a deduction. Sec. 262(a).

As a general rule, if a taxpayer provides sufficient evidence that he incurred a trade or business expense contemplated by section 162(a) but is unable to adequately substantiate the amount, the Court may estimate the amount and allow a deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, in order for the Court to estimate the amount of an expense, there must be some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Otherwise, an allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Deductions for expenses with respect to the use of passenger automobiles, if otherwise allowable, are subject to strict substantiation rules. See secs. 274(d), 280F(d)(4); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). For expenses relating to passenger automobiles, a taxpayer must substantiate with adequate records: (1) the amount of each

separate expense; (2) the mileage for each business use of the passenger automobile and the total mileage for all purposes during the taxable period; (3) the date of the business use; and (4) the business purpose of the use. See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Substantiation by adequate records generally requires the taxpayer to "maintain an account book, diary, log, statement of expense, trip sheet, or similar record" prepared contemporaneously with the use of the passenger automobile as well as documentary evidence of the individual, actual expenses. Sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

In lieu of substantiating actual passenger automobile expenses, a taxpayer may calculate them by using the standard mileage rate established by the Commissioner. See sec. 1.274-5(j)(2), Income Tax Regs. The taxpayer may claim the deduction on the basis of either actual expenses or standard mileage, not both. Nash v. Commissioner, 60 T.C. 503, 520 (1973). If the taxpayer elects the actual expense method, he must substantiate his business use percentage for the passenger automobile. Larson v. Commissioner, T.C. Memo. 2008-187, 2008 Tax Ct. Memo LEXIS 182, at *12; sec. 1.274-5T(d)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46025 (Nov. 6, 1985).

In the absence of adequate records a taxpayer may substantiate passenger automobile expenses with sufficiently detailed written or oral statements and other collateral evidence establishing that the expense was incurred. Dyer v. Commissioner, T.C. Memo. 2012-224, at *22; see sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., supra. While a noncontemporaneous log may be used to substantiate these kinds of expenses, "the corroborative evidence required to support an expenditure or use must have a high degree of probative value to elevate such statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure or use supported by sufficient evidence." Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).

With these fundamental principles of Federal income tax in mind, the Court considers petitioner's claims to the various deductions in dispute.

A.  Financial Services Business

Petitioner claimed, and the IRS disallowed, deductions for the following expenses related to his financial services business for 2011: (1) advertising; (2) car and truck expenses; (3) depreciation of a passenger automobile; (4) insurance (other than health); (5) legal and professional services; (6) office expenses; (7) supplies; (8) utilities; and (9) other expenses for tolls, cellular phone use, and

software.  Respondent conceded that petitioner can deduct $863 for insurance

(other than health) and $3,409 for legal and professional services.  The Court

addresses each deduction below.

1.    Advertising

Petitioner claimed a deduction for advertising expenses of $120.  Petitioner

testified that he had hired a marketing company and had made eight payments of

$15 each, or a total of $120, during 2011.  Petitioner provided credit card

statements to substantiate these payments.  Petitioner testified that it was necessary

for him to market and advertise his financial services business to obtain clients and

that the marketing company provided information to financial advisers on how to

market their businesses.  Petitioner has proven that he paid expenses to advertise

or market his financial services business and that those expenses were ordinary

and necessary to his business.  Petitioner can deduct advertising expenses of $120.

2.    Car and Truck Expenses

Petitioner claimed a deduction for actual car and truck expenses of $8,748.

Petitioner argued at trial that he is entitled to a higher deduction of $12,591 for

expenses related to his two passenger automobiles, the Porsche and the Chevrolet

Suburban, using the actual cost method for repairs, insurance, and fuel.

Deductions for these expenses, however, are subject to the stricter substantiation

rules of section 274(d), and petitioner has failed to meet his burden of proof under those rules.

Under the actual expense method petitioner is entitled to deduct only that percentage of the expense he incurred or paid with respect to a particular passenger automobile that equals his business use percentage for that passenger automobile. See Larson v. Commissioner, 2008 Tax Ct. Memo LEXIS 182, at *14; sec. 1.274-5T(d)(2)(i), Temporary Income Tax Regs., supra. Specifically, petitioner has not substantiated the business use percentage for the Porsche or the Chevrolet Suburban.

Petitioner testified that he used the Porsche 90% of the time and the Chevrolet Suburban 90% of the time for his financial services business and that he rarely used either for his marketing consulting business. However, petitioner's testimony that he used both passenger automobiles 90% of the time for his financial services business contradicts the information he reported in the Forms 4562 filed with his 2011 tax return. The Form 4562 calculating the depreciation deduction for his financial services business reports only the Porsche as listed property for the financial services business; the Chevrolet Suburban is not reported as listed property for that business. Instead, petitioner reported the Chevrolet Suburban as listed property in the Form 4562 calculating the

depreciation deduction for his marketing consulting business and reported its business use as 87.69% for that business.

Further, the IRS allowed petitioner a deduction for car and truck expenses of $2,221 for his marketing consulting business, presumably with respect to the Chevrolet Suburban, and petitioner has not shown what amount, if any, of the allowed deduction overlaps with the deduction for car and truck expenses of $12,591 he now claims for his financial services business.

Petitioner also failed to produce sufficient evidence to substantiate the total use of either passenger automobile during 2011. Petitioner appeared to rely upon information reported in the Forms 4562 for his two businesses as evidence of the business use and total use of the two passenger automobiles. Petitioner reported driving the Porsche 10,500 miles for his financial services business and 500 miles for personal use, for a total of 11,000 miles, and the Chevrolet Suburban 11,400 miles for his marketing consulting business and 1,600 miles for personal use, for a total of 13,000 miles.

The repair invoices for the Porsche and the Chevrolet Suburban are the only credible evidence in the record that purports to corroborate the total use of either passenger automobile, and these records are incomplete. According to the stipulated repair invoices, petitioner drove the Porsche a total of 4,071 miles

during a 7-month period and drove the Chevrolet Suburban a total of 3,051 miles during an 11-month period. However, there is no other credible evidence in the record establishing petitioner's total use of the Porsche for the other five months or of the Chevrolet Suburban for the remaining one month in 2011. The Court finds it difficult to believe that petitioner drove the Porsche almost 6,000 miles in the remaining five months and the Chevrolet Suburban almost 10,000 miles in one month. The mileage reported in the Forms 4562 is, at best, a ballpark estimate.

Petitioner also failed to establish the amount of business use of either passenger automobile in 2011. As support for his testimony that he used each passenger automobile 90% of the time for his financial services business, petitioner offered his Google calendar. Although petitioner maintained his Google calendar contemporaneously, it provided only the date, time, and name of the appointments and events and did not distinguish between the personal and business entries. Petitioner testified that he had maintained a contemporaneous mileage log on his computer during 2011 that had corresponding details for each business appointment and event entered in his Google calendar but that the mileage log was lost when his computer hard drive crashed.

Where a taxpayer establishes that the failure to produce adequate records is due to the loss of the taxpayer's records through circumstances beyond the

taxpayer's control, such as destruction by fire, flood, earthquake, or other casualty, the taxpayer may substantiate a deduction by reasonable reconstruction of expenditure or use. Sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985). The burden is on the taxpayer to show that the documentation was actually lost or destroyed because of circumstances beyond his control. McClellan v. Commissioner, T.C. Memo. 2014-257, at *13. Petitioner did not provide any credible evidence to corroborate his assertion that his computer hard drive crashed.

Even assuming the contemporaneous mileage log was lost because of a hard drive crash, petitioner has failed to provide a reasonable reconstruction of the business use of either passenger automobile. Instead of the contemporaneous mileage log, petitioner provided a document titled "Mileage log 2011" for his financial services business that he had created in preparation for trial. The mileage log purports to provide details for the business appointments and events on his Google calendar, including the alleged activity for each date, the alleged miles driven for each appointment, the alleged purpose of each appointment (e.g., prospecting, training, client meeting, networking, or referral), and the town to which he allegedly traveled. The mileage log does not indicate which passenger automobile he used, is missing entries for May and a part of June 2011, and lists

several business locations as "various" as opposed to a specific location. The lack of specificity in petitioner's mileage log does little to corroborate his testimony of the business use of either passenger automobile. Petitioner's noncontemporaneous mileage log is not supported by highly probative corroborating evidence.

While the Court recognizes that petitioner needed a passenger automobile for his financial services business, he failed to substantiate the business use of the Porsche or the Chevrolet Suburban by adequate records or by sufficient evidence corroborating his own testimony as required by section 274(d). Therefore, petitioner's car and truck expenses are not deductible.

### 3. Depreciation

Petitioner claimed a depreciation deduction of $1,694 with respect to the Porsche. Section 167(a) allows a depreciation deduction for exhaustion, wear and tear, and obsolescence of property if the taxpayer uses such property in a trade or business or other income-producing activity. See also sec. 1.167(a)-1(a), Income Tax Regs. To be entitled to a depreciation deduction, petitioner must establish the Porsche's depreciable basis by showing its cost, the applicable recovery period, and the previously allowable depreciation. See Cluck v. Commissioner, 105 T.C. 324, 337 (1995). In addition to establishing the Porsche's depreciable basis, petitioner must also prove its business use under the heightened substantiation

rules of section 274(d). See McClellan v. Commissioner, T.C. Memo. 2014-257, at *24.

In the Form 4562 for his financial services business petitioner reported that he used the Porsche 95.45% of the time for business use, drove 10,500 miles for business use, and had a cost basis of $45,000. As discussed above, petitioner failed to substantiate the personal use and business use allocation for the Porsche. Further, petitioner did not present any evidence to adequately substantiate the Porsche's cost basis or the previously allowable depreciation. He testified that it was a gift from his former wife and was purchased with joint assets, but his testimony did not establish its cost basis. Petitioner is not entitled to a depreciation deduction of $1,694.

### 4. Insurance (Other Than Health)

Petitioner claimed a deduction for insurance (other than health) expenses of $1,036. Respondent conceded $863 as an allowable deduction for those expenses. Petitioner argued he is entitled to an additional $173 for the cost of his Automobile Association of America (AAA) automobile hazard insurance membership (AAA membership) for 2011.

As discussed above, petitioner drove to events and client appointments for his financial services business. Automobile hazard insurance would seem to be an

ordinary and necessary expense in case petitioner's passenger automobile broke down. However, petitioner has not proven what portion of the full amount of the expense was related to his financial service business. Further, petitioner testified that the AAA membership covered four passenger automobiles in his household driven by himself, his wife, and his two teenage children. The Court is unable to estimate under Cohan the portion of the AAA membership expense attributable to the business use because, as discussed above, petitioner neither presented sufficient evidence of the business use and personal use of the Porsche or the Chevrolet Suburban to establish a rational basis for an estimate, nor presented evidence to allocate the expense between the other family drivers and the passenger automobiles they drove. Petitioner is not entitled to a deduction for the AAA membership expense.

### 5. Legal and Professional Services

Petitioner claimed a deduction for legal and professional service expenses of $92. Respondent conceded that petitioner is entitled to a total deduction for legal and professional service expenses of $3,409 for the E&O insurance and fees paid to one of the broker-dealers.[11]

---

[11]Respondent did not explain why he allowed this expense under the category of "legal and professional expenses" rather than under the category

(continued...)

At trial petitioner asserted that he is entitled to an additional deduction of $1,019 for a payment he purportedly made to a broker-dealer at the beginning of 2011. Respondent contended that this amount was paid in 2010, not 2011. Petitioner's financial services business was on the cash method of accounting. Under the cash method of accounting, expenditures are deducted for the taxable year in which paid. Sec. 461(a); sec. 1.461-1(a)(1), Income Tax Regs.

Petitioner submitted an invoice from a broker-dealer listing four payments totaling $4,960.50. The payment petitioner refers to, which is shown in the invoice as $1,552 and not $1,019, was posted on February 11, 2011. Petitioner's bank account statements identify only three payments totaling $3,409 made in 2011. Although that broker-dealer posted the payment of $1,552 to his account at the beginning of 2011, the record does not support a finding that petitioner paid the expense in 2011. Petitioner is not entitled to an additional deduction of $1,091 for legal and professional service expenses.

_____

[11](...continued)
"insurance (other than health)."

6. Office Expenses

Petitioner claimed a deduction for office expenses of $3,081. Petitioner did not provide any testimony or documentation to support a deduction for office expenses.

At trial petitioner argued that this amount was attributable to the fees he paid to a broker-dealer. However, as discussed supra section III.A.5, respondent conceded that petitioner is entitled to a deduction for legal and professional services expenses of $3,409 for the E&O insurance and fees petitioner had paid to that broker-dealer in 2011. Petitioner is not entitled to a deduction of $3,081 for office expenses.

7. Supplies

Petitioner claimed a deduction for supply expenses of $1,886. Petitioner has proven that he paid expenses for paper, ink cartridges, and other ordinary and necessary supply expenses for operating a business. However, petitioner has substantiated only $399 of expenses for supplies in 2011. Petitioner is entitled to a deduction for supply expenses of $399.

8. Utilities

Petitioner claimed a deduction of $1,518 for utility expenses for the cable and internet services at his home during 2011. Petitioner submitted bank account

statements showing he had paid $2,258.71 for cable and internet services in 2011. Petitioner did not explain why he reported expenses for the cable and internet services in an amount less than the amount he paid in 2011. Petitioner testified that his wife and two teenage children also lived in the home and had access to and used these services. Although he used these services for both his business and personal purposes, petitioner argued that he should not be required to allocate the expenses between his business use and personal use because the use by his family was ancillary and had no value. The Court disagrees.

Petitioner testified that he did not often use the television, but when he did he watched financial news programs. Even if the cable service was an ordinary and necessary business expense for his financial services business, petitioner did not provide any other evidence to enable the Court to estimate a deductible amount for the cable service expenses. Petitioner is not entitled to a deduction for the cable service expenses.

Petitioner has proven that the internet service was an ordinary and necessary business expense for his financial services business. The Court recognizes that a financial investment adviser would commonly and frequently need to use the internet to review information about investments as well as to communicate with clients through email. However, the Court is unable to estimate a deductible

amount for the internet service expenses because petitioner failed to provide evidence upon which the Court may make a rational estimate. Petitioner cannot deduct any expenses for the internet service for 2011. Petitioner is not entitled to deduct utility expenses of $1,518.

### 9. Other Expenses

Petitioner claimed a deduction for other expenses totaling $1,943, consisting of: (1) $95 for tolls; (2) $1,756 for cellular phone services;[12] and (3) $92 for software.

Petitioner introduced toll account statements at trial to substantiate the expenses he had reported for tolls. The statements report $70 in tolls paid between January to September 2011. Petitioner asserted that his noncontemporaneous mileage log demonstrated the business purpose of the toll expenses. However, as discussed above, the Court found petitioner's noncomtemporaneous mileage log to be unsupported by corroborating evidence. Furthermore, the entries in the toll account statements do not correspond to the entries on petitioner's Google calendar. For example, there are toll charges on January 5, January 22, March 7,

---

[12]For taxable years beginning after December 31, 2009, cellular phones are no longer included in the definition of listed property under sec. 280F(d)(4), which was amended by the Small Business Jobs Act of 2010, Pub. L. No. 111-240, sec. 2043(a), 124 Stat. at 2560. As a result of this amendment, a deduction for cellular phone use in 2011 is not subject to the strict substantiation rules of sec. 274(d).

March 23, and August 27, 2011, but not any corresponding entries on his Google calendar for these dates. Petitioner is not entitled to a deduction for toll expenses of $95.

Petitioner also deducted the cost of the cellular phone services of $1,756 as a business expense. Petitioner submitted bank account statements to substantiate that he had paid $1,551.40 for his three-line family cellular phone service plan in 2011, less than the amount he reported.

Petitioner testified that he had used his cellular phone for both personal and business use for both of his businesses. Petitioner further testified that he had deducted the cost of the three-line family cellular phone service plan, including the portion he had used for his personal use and the two lines his children used, because it was not easy to allocate the usage between his personal and business use, the allocation would have required "clearly more time than * * * [he] wanted to spend on this activity", and his children had used their cellular phones only for texting, which did not cost extra. Although the Court believes a cellular phone was necessary to his financial services business, petitioner has not provided any evidentiary basis for applying the Cohan rule to his cellular phone expenses for 2011. See Vanicek v. Commissioner, 85 T.C. at 742-743 (citing Williams v. United States, 245 F.2d 559 (5th Cir. 1957)). Petitioner did not present any

testimony or other evidence delineating how many cell phone minutes he used for his business calls or personal calls. Petitioner is not entitled to a deduction for the cellular phone services of $1,756.

Petitioner testified that he had paid $92 for a tax software program but submitted a credit card statement showing he had paid $19.95 for the software in 2011. However, he used the software to prepare his entire 2011 tax return, not just the Schedules C. Petitioner did not provide any proof that would allow the Court to allocate the expense for the tax software program between his personal and business use. Petitioner is not entitled to deduct the $92 expense for software.[13]

B.     Marketing Consulting Business

Petitioner claimed deductions for the following expenses related to his marketing consulting business: (1) car and truck expenses of $2,221; (2) depreciation with respect to the Chevrolet Suburban of $2,587; and (3) expenses for the business use of his home of $13,942. The IRS allowed petitioner the claimed deductions for car and truck expenses and depreciation in full but disallowed $5,465 of the deduction for expenses for the business use of his home. By allowing petitioner a portion of the home office expense deduction, the IRS has

_____

[13]The tax software program expense of $19.95 would have been considered a miscellaneous deduction for 2011 had petitioner filed a Schedule A, Itemized Deductions.

tacitly admitted that petitioner qualifies for the deduction.[14]  Respondent, however, disputes the amount of the deduction.  Respondent contended that the deduction is limited to $8,477.  Petitioner argued that he is entitled to the full deduction of $13,942 for expenses for the business use of his home because, even if respondent disallowed the 2011 allocated home office expenses of $7,966, he had a $30,407 carryover of operating expenses from 2010 that alone would support the full claimed deduction for 2011.

Section 280A(c)(5) provides a limitation on the amount of the deduction allowed under section 280A(c)(1).  Specifically, section 280A(c)(5) provides that home office expense deductions are limited to the amount of gross income from the use of the dwelling for a trade or business, reduced by deductions allocable to the dwelling regardless of its use as the location of a trade or business, such as mortgage interest and property taxes, and further reduced by allocable business expense deductions not related to the use of the dwelling itself.  In other words, no deduction for business use of a home may be claimed if the deduction would give rise to, or increase, a net loss from the business to which the deduction relates. See Visin v. Commissioner, T.C. Memo. 2003-246, 2003 Tax Ct. Memo LEXIS

---

[14]Sec. 280A(c)(1)(A) allows the deduction of expenses allocable to a portion of a taxpayer's home that is used exclusively and regularly as the principal place of business for the taxpayer's trade or business.

246, at \*10, aff'd, 122 F. App'x 363 (9th Cir. 2005); Martin v. Commissioner, T.C. Memo. 1996-503, 1996 Tax Ct. Memo LEXIS 523, at \*21, aff'd per curiam without published opinion 155 F.3d 559 (4th Cir. 1998). To the extent deductions are disallowed under section 280A(c)(5), they may be carried forward to the succeeding taxable year. See sec. 280A(c)(5) (flush language).

In the 2011 Form 8829 petitioner reported a carryover of operating expenses from a 2010 Form 8829 of $30,407. Even though the year at issue here is 2011, the Court has jurisdiction to consider facts related to 2010 and other years not at issue in order to correctly redetermine the amount of the deficiency for 2011. See sec. 6214(b) ("The Tax Court in redetermining a deficiency of income tax for any taxable year * * * shall consider such facts with relation to the taxes for other years * * * as may be necessary correctly to redetermine the amount of such deficiency.").

Petitioner argued that for 2010 the IRS examined his claim for a deduction for expenses for the business use of his home, that he "was found to be in full compliance", and that the carryforward from 2010 was previously addressed in a prior Court proceeding and accepted. Petitioner appears to argue that a stipulated decision entered in a case before the Court for the prior year, 2010, establishes that he is entitled to claim the carryover of operating expenses from 2010. See Levine

v. Commissioner, docket No. 10678-13S (May 22, 2014). Petitioner appears to be arguing that the doctrine of collateral estoppel applies.

"The general principle of collateral estoppel * * * is that a fact decided in an earlier suit is conclusively established between the parties in a later suit, provided that such fact was necessary to the judgment of the first suit." Fox v. Commissioner, 61 T.C. 704, 711 (1974). However, collateral estoppel does not apply to the carryover of petitioner's operating expenses from 2010 because the stipulated decision entered for 2010 was not a conclusive determination on the merits by the Court. See O'Sullivan v. Commissioner, T.C. Memo. 1994-395, 1994 Tax Ct. Memo LEXIS 408, at *3-*4.

It has long been held that collateral estoppel applies only where there has been an adjudication on the merits. Id., 1994 Tax Ct. Memo LEXIS 408, at *3. A stipulated decision entered pursuant to the settlement of the parties without a determination on the merits by the Court does not have the effect of collateral estoppel as to any other year. Id. at *3-*4. Our records show that petitioner filed a petition with the Court with respect to 2010 and that the parties settled the case by a stipulated decision entered on May 22, 2014. Because the parties settled the 2010 case by a stipulated decision, that case did not result in a decision on the specific fact of the amount of the carryover of operating expenses from 2010.

Respondent contends that petitioner bears the burden of production with respect to the carryover of operating expenses from 2010 and failed to substantiate the carryover from 2010. The Court agrees. Petitioner has not sustained his burden of proving the amount of the carryover of operating expenses from 2010. Petitioner did not offer any evidence to prove the amount of the carryover of operating expenses from 2010 that he claimed on the 2011 Form 8829. Petitioner did not submit a copy of the Form 8829 he filed with his 2010 tax return or documents to support any expenses he claimed on that form that produced the alleged carryover of operating expenses. The Court concludes that petitioner is not entitled to deduct expenses for the business use of his home for 2011 in excess of the amount allowed by the IRS.

IV.    Section 6662(a) Accuracy-Related Penalty

Respondent determined an accuracy-related penalty for 2011 because petitioner's underpayment was due to a substantial understatement of income tax or negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1) and (2). Only one section 6662 accuracy-related penalty may be imposed with respect to any given portion of an underpayment, even if that portion is attributable to more than one type of conduct listed in section 6662(b). See New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 187 (2009), aff'd, 408 F. App'x 908 (6th

Cir. 2010); sec. 1.6662-2(c), Income Tax Regs. Nevertheless, the Court considers both grounds for imposition of the penalty.

Under section 7491(c), the Commissioner bears the burden of production with regard to the liability of individuals for penalties. See Higbee v. Commissioner, 116 T.C. at 446. To meet that burden respondent must come forward with evidence indicating that it is appropriate to impose the penalty. See id. As explained below the Court concludes that respondent has met his burden of production with respect to a substantial understatement of income tax under section 6662(a) and (b)(2) if the Rule 155 computations so establish, or, in the alternative, with respect to negligence or disregard of rules or regulations under section 6662(a) and (b)(1), for 2011.

Petitioner must come forward with persuasive evidence that respondent's determination is incorrect. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 447. Petitioner may meet this burden by proving that he acted with reasonable cause and in good faith with respect to the underpayment. See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 447; sec. 1.6664-1(b)(1), Income Tax Regs. As explained below, petitioner did not show that he acted with reasonable cause and in good faith with respect to the underpayment of tax for 2011.

A.    Substantial Understatement

A "substantial understatement of income tax" includes an understatement of income tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  See sec. 6662(d)(1)(A); sec. 1.6662-4(b), Income Tax Regs.  An "understatement" means the excess of the amount of the tax required to be shown on the tax return over the amount of tax that is shown on the tax return, reduced by any rebate.  Sec. 6662(d)(2)(A).

The Court finds that in the event the computations under Rule 155 establish there is an understatement of income tax for 2011, as a result of the Court's holding and respondent's concessions, that exceeds the greater of 10% of the tax required to be shown on petitioner's tax return or $5,000, petitioner has substantially understated his income tax and is liable for a penalty under section 6662(a) and (b)(2).

B.    Negligence or Disregard of Rules or Regulations

Whether or not the computations under Rule 155 establish a substantial understatement of income tax for 2011, petitioner is liable for the accuracy-related penalty because he was negligent and disregarded rules or regulations.

The accuracy-related penalty may also be imposed under section 6662(a) because of negligence.  Sec. 6662(b)(1).  Negligence includes any failure to make

a reasonable attempt to comply with the provisions of the Code, including any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); see Higbee v. Commissioner, 116 T.C. at 448; sec. 1.6662-3(b)(1), Income Tax Regs. Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances. See Neely v. Commissioner, 85 T.C. 934, 947 (1985).

The accuracy-related penalty may also be imposed under section 6662(a) because of a disregard of rules or regulations. Sec. 6662(b)(1). A disregard of rules or regulations is careless if the taxpayer does not "exercise reasonable diligence to determine the correctness of a return position". Sec. 1.6662-3(b)(2), Income Tax Regs. A disregard of rules or regulations is reckless if the taxpayer "makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard conduct that a reasonable person would observe." Id.

Respondent has met his burden of production with respect to petitioner's negligence and disregard of rules or regulations because petitioner failed to maintain adequate records to substantiate some of the expenses underlying the deductions claimed in the Schedules C for his financial services business and marketing consulting business for 2011, including adequate records to substantiate

the passenger automobile expenses that are subject to the strict substantiation requirements of section 274. Petitioner also failed to maintain adequate records to allocate the cable and internet services, cellular phone services, and AAA membership between his personal and business use and, instead, carelessly deducted these expenses in full as business expenses even though he acknowledged at trial that he knew he was claiming personal expenses in doing so.

Petitioner is a retired C.P.A. and holds an advanced degree. He had the education and skills to understand that the tax laws required him to maintain and produce adequate records to substantiate the deductions he claimed on his 2011 tax return and that the portion of expenses attributable to his personal use were not deductible. Further, his education and skills enabled him to determine how to allocate the cable and internet services, cellular phone services, and AAA membership between his personal and business use. The Court does not accept, as petitioner suggests, that he did not know how to comply with the substantiation or allocation rules, because he was a retired C.P.A.

Accordingly, the Court concludes that petitioner was negligent and disregarded rules or regulations and, in the alternative, is liable for the accuracy-related penalty under section 6662(a) and (b)(1) for 2011.

C.    Reasonable Cause for the Underpayment of Tax

The accuracy-related penalty does not apply to any part of an underpayment of tax if it is shown that the taxpayer acted with reasonable cause and in good faith with respect to that portion. Sec. 6664(c)(1). Circumstances that indicate reasonable cause and good faith include reliance on the advice of a tax professional or an honest misunderstanding of the law that is reasonable in the light of all facts and circumstances. Sec. 1.6664-4(b), Income Tax Regs.; see Higbee v. Commissioner, 116 T.C. at 449. Relevant facts and circumstances for the Court to consider include the knowledge and experience of the taxpayer. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner prepared his own 2011 tax return. Petitioner argued that he should not be liable for the accuracy-related penalty because the expenses he reported for his financial services business were accurate, proper, necessary, and customary in his line of work. Petitioner further argued that he prepared his 2011 tax return to the best of his ability. Petitioner has failed to explain his failure to substantiate the passenger automobile expenses underlying the disallowed Schedule C deductions for his financial services business beyond an uncorroborated statement that his computer hard drive crashed (for which he did not provide any documentary proof). Further, petitioner testified that allocating

some of the expenses between his personal and business use required more time than he was willing to spend on the activity. Accordingly, petitioner has not met his burden of proving reasonable cause and is liable for the section 6662(a) accuracy-related penalty for 2011.

The Court has considered all of the parties' arguments, and, to the extent not addressed herein, the Court concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.